| | |
|---|---|
| GENETHA DAVIS, as Administrator of the Estate of Willie C. Davis, | |
| Plaintiff, | No. 18 C 6050 |
| v. | Judge Thomas M. Durkin |
| MARK CURRAN, individually and in his official capacity as SHERIFF OF LAKE COUNTY; SCOTT WILSON; RYAN SCULLION; IVAN BEAL; ARMOR CORRECTIONAL HEALTH SERVICES, INC.; CECILIA CARDONA; JEFFREY VISTAN; ALVARO ENCINAS; MELLODY STANDIFORD; KAREN OLSON; BRYANT CHUA; UNKNOWN LAKE COUNTY ADULT CORRECTIONAL FACILITY EMPLOYEES; UNKNOWN LAKE COUNTY ADULT CORRECTIONAL SERVICES MEDICAL DIRECTOR; AND UNKNOWN ARMOR CORRECTIONAL HEALTH SERVICES INC. EMPLOYEES, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Genetha Davis ("Plaintiff") alleges that Defendants are liable for the death of her father, Willie Davis ("Davis"), while he was in pretrial custody in the Lake County Jail (the "Jail"). Defendants are the Sheriff of Lake County, officially; Sheriff Mark Curran, individually; correctional officers at the Jail; the Jail's health care services provider, Armor Correctional Health Services, Inc.; and Armor employees who work at the Jail. Pursuant to 42 U.S.C. § 1983, Plaintiff brings claims for: violation of the

Eighth and Fourteenth Amendments (Count I); conspiracy (Count II); and failure to intervene (Count III). Plaintiff also brings state law claims: under the Survivor Act for intentional infliction of emotional distress (Count IV); under the Survivor Act for for Davis's pain and suffering (Count V); under the Wrongful Death Act for her own suffering (Count VI); and respondeat superior against Armor (Count VII). Sheriff Curran (in his individual capacity) and Officer Ivan Beal have moved to dismiss the claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 36; R. 38. So have all the Armor defendants. R. 40. Sheriff Curran and Officer Beal's motion is denied. The Armor motion is denied in part and granted in part.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Davis was taken to the Jail on August 12, 2017. R. 1 ¶ 3. The parties don't address the circumstances of his arrest. There appears to be no dispute that Davis was a pretrial detainee and was not in custody pursuant to a conviction.

When he arrived at the Jail, he informed an officer that he suffered from asthma, was taking the medication prednisone, and used a prescription inhaler. *Id.* ¶¶ 4, 25, 27. The medical staff confirmed with a pharmacy that Davis had active prescriptions for Advair, prednisone, and albuterol. *Id.* ¶ 28. The medical staff also noted that Davis's "peak expiratory flow rate"—a measurement of how quickly a person can exhale—was 300, whereas the normal rate for Davis's age group and height is 500. *Id.* ¶ 29.

Two days later, Davis met with defendant Dr. Alvaro Encinas at the Jail's medical clinic. *Id.* ¶ 30. Davis again reported his condition and the medications he was taking. Dr. Encinas decided to order a tapering of prednisone for Davis. *Id.* Dr. Encinas scheduled a follow-up appointment two months later. *Id.* ¶ 31. It is common

knowledge in the medical community that stopping prednisone abruptly may cause severe complications. *Id.* ¶¶ 32-33.

Defendants either failed to properly taper the prednisone or stopped providing it altogether. *Id.* ¶¶ 34-35. Davis began to exhibit "readily apparent" physical asthmatic symptoms, such as wheezing and difficulty breathing. *Id.* ¶ 36. Davis informed the Jail officers and medical professionals that his condition had worsened, but nothing was done in response. *Id.* ¶ 37. Defendant nurses Cecilia Cardona, Jeffrey Vistan, Mellody Standiford, Karen Olson, and Bryant Chua (the "Armor nurses") all had contact with Davis on a regular basis and were aware of his medical condition and the medications he required. *See* R. 49 at 6. (These particular facts about the nurses are not in the complaint but were added by Plaintiff in her brief. The Court properly considers them as they are "elaborations" that are "consistent" with the allegations in the complaint and are in support of the theories of liability already contained in the complaint. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).)

On September 2, 2017, Davis was having difficulty breathing and cried for help. R. 1 ¶ 39. Other detainees told the officers, including defendant Officer Scullion, that Davis was in physical distress, but the officers ignored this information. *Id.* ¶¶ 40-41. When Davis again cried for help, Officer Scullion checked on him and noticed that Davis was exhibiting seizure-like symptoms and was not responsive to Officer Scullion. *Id.* ¶¶ 42-43. Defendant Sergeant Wilson called for an ambulance ten minutes later. *Id.* ¶ 44. Defendant Officer Beal also responded to the emergency. *See*

R. 49 at 18. Davis was taken to the hospital and was pronounced dead two days later. *Id.* ¶ 45.

## Analysis

Defendants have moved to dismiss all of Plaintiff's claims enumerated above. The Court addresses each in turn.

## I.   Denial of Medical Care (Count I) & Failure to Intervene (Count III)

### A.   Applicable Standard

Plaintiffs brings claims under both the Eighth and Fourteenth Amendments, but it appears to be undisputed that Davis was a pretrial detainee, not a person incarcerated post-conviction. As Plaintiff points out, the rights of pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, because pretrial detainees are held to ensure their appearance in court, not as a form of punishment. *See Miranda v. County of Lake*, 900 F.3d 335, 350 (7th Cir. 2018) ("Pretrial detainees stand in a different position: they have not been convicted of anything, and they are still entitled to the constitutional presumption of innocence. Thus, the punishment model is inappropriate for them."). Despite the difference in the applicable amendment, courts have borrowed the Eighth Amendment's deliberate indifference standard to assess Fourteenth Amendment claims by pretrial detainees.

However, in August 2018, the Seventh Circuit, in accordance with recent Supreme Court precedent, abolished this borrowing practice and established a new standard for Fourteenth Amendment claims by pretrial detainees. *See Miranda*, 900

F.3d at 350-51 (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)). Rather than deliberate indifference, which requires a plaintiff to allege that the defendant was subjectively aware that he was causing harm to the plaintiff, the new standard requires a pretrial detainee to allege only that the defendant's conduct was "objectively unreasonable." *See Miranda*, 900 F.3d at 351. The defendant's awareness that his conduct created an unreasonable risk to the plaintiff's well-being is no longer required. *See McWilliams v. Cook County*, 2018 WL 3970145, at *5 (N.D. Ill. Aug. 20, 2018) ("Unlike in the Eighth Amendment context, deliberate indifference—the defendant's subjective awareness that her conduct was unreasonable—is not required.") (Feinerman, J.).

Plaintiff argues that her allegations meet even the higher deliberate indifference standard. Maybe so. But it is important to identify the proper standard of liability at the outset of the case. In their motions, Defendants recite the deliberate indifference standard, but their arguments focus on causation (or personal involvement, which is separately required for any constitutional claim, whether under the Eighth or Fourteenth Amendments) and they do not address the Seventh Circuit's holding in *Miranda*. Assuming the Court is correct that there is no dispute that Davis was a pretrial detainee, the Court holds that *Miranda's* new "objectively unreasonable" standard, and not deliberate indifference, is the applicable standard for Plaintiff's constitutional claims.

## B.    Merits

Officer Beal and the Armor nurses argue that Plaintiff has failed to plausibly allege their personal involvement in Davis's care (or lack of care). *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("For a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights."); *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) ("[I]ndividual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at issue. In addition to the element of deliberate indifference, § 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim."). "The personal-involvement requirement is satisfied if the constitutional violation occurs at a defendant's direction or with her knowledge or consent." *Mitchell*, 895 F.3d at 498.

Officer Beal argues that Plaintiff does not allege that he "had personal knowledge that Mr. Davis suffered from asthma, or took medications for that condition, or observed Mr. Davis to be wheezing or having difficulty breathing, or that Mr. Davis expressed those symptoms to [Beal] and Beal ignored them." R. 39 at 5. The Armor nurses argue that Plaintiff's general pleading regarding the conduct of the "medical staff" fails to plausibly implicate them in the decision to taper prednisone or its implementation. *See* R. 62 at 3-4.

Both of these arguments ignore that Plaintiff has alleged that Davis's symptoms were "readily apparent." Whether Officer Beal or the Armor nurses had been told that Davis had asthma or that his medication regimen had been altered is

beside the point. It is entirely plausible that a person suffering from severe asthma whose medication regimen is improperly altered would exhibit obvious distress. It is also plausible that a person suffering such a condition in jail would seek assistance from the officers and medical staff responsible for his well-being. Although Defendants fault Plaintiff for not identifying specific instances of improper care for each individual defendant, they do not seriously contend that they had no contact with Davis. And Davis having plausibly alleged that his distress was "readily apparent" has plausibly alleged that Defendants' conduct in response to that condition was "objectively unreasonable," and a violation of the Fourteenth Amendment. *See Miranda*, 900 F.3d at 353-54 (7th Cir. 2018).

These allegations also plausibly encompass a theory of failure to intervene in that Plaintiff has alleged Defendants' knowledge of Davis's condition, and it is plausible that a jail guard or nurse would have the ability to prevent the harm. *See Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (liability for failure to intervene requires that the defendant "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it"); *Sanchez v. City of Chicago*, 700 F.3d 919, 929 (7th Cir. 2012) ("failure to intervene" is a form of "personal involvement" that does not require actual "participat[ion] in [the] misconduct"); *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (liability for failure to intervene can arise from failing to "call for help" when appropriate); *see also Taylor v. Wexford Health Sources, Inc.*, 2016 WL 3227310, at *5 (N.D. Ill. June 13, 2016) ("Indeed, failure to intervene is merely a theory of liability, not a claim, to establish

8

the liability of the Medical Defendants if they did not directly participate in the challenged failure to provide medical care yet can be shown to have been aware of the denial, to have had a realistic opportunity to prevent it, and to not have intervened to prevent the harm from occurring.").

Discovery may reveal that some of the defendants did not interact with Davis, or that Davis's condition was not so readily apparent to permit a reasonable jury to find for Plaintiff. But at this stage of the proceedings, Plaintiff has plausibly alleged Defendants' personal involvement in objectively unreasonable medical care. Thus, Defendants' motions to dismiss Plaintiff's claims for denial of medical care and failure to intervene are denied.

## II. Conspiracy (Count II)

Defendants also argue that Plaintiffs have failed to allege that they participated in a conspiracy. To state a claim under § 1983 for civil conspiracy, a plaintiff must allege facts from which the Court may reasonably infer there was "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988); *see also Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018). "Under *Twombly*, all [a] plaintiff need[s] to allege [is] a plausible account of a conspiracy." *Geinosky*, 675 F.3d at 749.

The individual Armor defendants argue that "Plaintiff does not allege the identity of the state and private officials that engaged in the conspiracy, the purpose

and date of the conspiracy, or specific facts and circumstances upon which an express or implied agreement between parties could be inferred." R. 40 at 8. Officer Beal similarly argues that "[t]here are no factual allegations that [Officer] Beal ever spoke, consulted, or otherwise came to an understanding with [Officer] Scullion and/or [Sergeant] Wilson and/or any of the Medical Defendants." R. 39 at 6.

As with the arguments against the underlying Fourteenth Amendment claim, these arguments ignore the alleged circumstances of Davis's condition. As discussed, Davis's death and the readily apparent nature of his condition are sufficient to plausibly alleged that Defendants did not provide "objectively reasonable" medical care in accordance with the Fourteenth Amendment. It is undisputed that Defendants worked as part of the same administration at the Jail, which of course is a confined space. It is plausible to infer from this fact that the individual defendants communicated with each other and supervisors, either orally or in writing, in determining how to address Davis's readily apparent condition. The inference that the individual defendants communicated about Davis's condition and either participated or acquiesced in the decisions regarding Davis's care is sufficient to plausibly allege agreement, and hence a conspiracy.

## III.    Intentional Infliction of Emotional Distress (Count IV)

Plaintiff also brings a claim for intentional infliction of emotional distress. To state such a claim under Illinois law, a plaintiff must allege: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the

conduct in fact caused severe emotional distress." *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Swearnigen–El*, 602 F.3d at 864 (quoting *Kolegas*, 607 N.E.2d at 211). In determining whether conduct meets the "extreme and outrageous" standard, courts consider three main factors: (1) "the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme"; (2) "whether the defendant reasonably believed its objective was legitimate"; and (3) "whether the defendant was aware the plaintiff was 'peculiarly susceptible to emotional distress, by reason of some physical or mental peculiarity.'" *Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003) (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 811 (Ill. 1998)).

The Armor defendants argue that Plaintiff has failed to plausibly allege that their conduct was "extreme and outrageous" and that it caused Davis "severe emotional distress." *See* R. 62 at 7. But here, as discussed, Plaintiff has plausibly alleged that Davis was suffering readily apparent physical distress due to the alteration of his asthma medication regimen and that the Armor defendants did not respond reasonably. In the context of a jail, where Davis had no ability to seek out alternative assistance, this is outrageous conduct, if true. *See Awalt v. Marketti*, 74 F. Supp. 3d 909, 942 (N.D. Ill. 2014) ("[A] reasonable juror could find that ignoring a patently severe medical condition . . . .is extreme and outrageous conduct, especially

because the [defendants] had complete authority over [the plaintiff] because he was incarcerated as a pretrial detainee."). Moreover, it is more than plausible that Davis suffered severe emotional distress as he slowly suffocated to death over a period of several days. The Armor defendants' motion to dismiss this claim is denied.

## IV.    Standard of Care Violation (Counts V & VI)

Plaintiff claims that Defendants breached the duty of care owed to Davis as a detainee. Plaintiff seeks recovery for Davis's pain and suffering pursuant to the Survivor Act, and for her own emotional pain and pecuniary loss caused by Davis's death pursuant to the Wrongful Death Act.

The Armor defendants contend that these claims rely on the allegations that "Dr. Encinas improperly tapered [Davis's] prescription to prednisone, which was contrary to common knowledge within the medical community," and as such, they implicate the standard of care for medical malpractice. *See* R. 40 at 10. Under Illinois law, a plaintiff bringing a medical malpractice claim must comply with the statutory requirement that the claim be supported by an affidavit from a healthcare professional certifying that "the plaintiff had a reasonable and meritorious cause for filing suit." 735 ILCS 5/2-622(a)(1).

The Court agrees with the Armor defendants with respect to Dr. Encinas's initial diagnosis and prescription for Davis. Whether it was proper to alter Davis's medication regimen, and whether Dr. Encinas's altered the regimen properly, are questions involving the application of "distinctively medical knowledge or principles, however basic." *Woodard v. Krans*, 600 N.E.2d 477, 488 (Ill. 1992). Plaintiff's brief

does not address how section 2-622 applies to Dr. Encinas's initial decisions—an implicit concession that a claim based on those decisions requires an affidavit in compliance with that section.

However, just as Plaintiff does not address Dr. Encinas's initial decisions, the Armor defendants do not meaningfully address Plaintiff's argument that defendants' liability arises from their "negligently ignoring Mr. Davis's requests for medical attention." R. 49 at 15. The Armor defendants argue that this is simply another way of saying that Plaintiff claims the treatment provided for Davis's asthma fell below the standard of care. The Court agrees that Plaintiff makes this claim. But, as discussed, Plaintiff also claims that Davis's physical distress was "readily apparent" and that the Armor defendants "ignored" his condition completely, *see* R. 1 ¶¶ 38, 90, 97, not simply that they failed to address it well. These allegations concern "the inherent character of the conduct involved," not whether "medical knowledge or principles" were appropriately applied. *See Woodard*, 600 N.E.2d at 488 (Ill. 1992). In other words, if Davis was suffering readily apparent physical distress and any of the Armor defendants (including Dr. Encinas) ignored that distress, or otherwise responded in an "objectively unreasonable" manner, they acted without regard to how they applied their medical knowledge. Thus, to the extent Plaintiff has stated a claim for violation of the Fourteenth Amendment claim, she can also proceed under the Survivor Act and Wrongful Death Act without the need for an affidavit from a medical professional.

Plaintiff also argues that the Armor defendants might have "negligently ignored" Davis's condition. Since negligence is a lower standard than the knowing or reckless action required for a constitutional violation, *see Miranda*, 900 F.3d at 353, this claim might snare more conduct than the constitutional claim. The Court has difficulty conceiving of a factual scenario in which any of the Armor defendants "ignored" Davis, without that action being reckless or knowing. The Armor defendants had responsibility for the well-being of a person confined to a jail cell. It is difficult to imagine how "ignoring" or "forgetting" about a person in such circumstances is not at least reckless. Nevertheless, the facts may show otherwise.

By contrast, to the extent the Armor defendants took action in response to Davis's condition, and Plaintiff plans to maintain that these actions were negligent in that they did not comply with the medical standard of care, such a claim must be supported by an affidavit that complies with section 2-622. This aspect of Plaintiff's claim—along with Plaintiff's claim regarding Dr. Encinas's initial decisions—is dismissed without prejudice so that Plaintiff may seek to comply with this section.

## Conclusion

The motion by Sheriff Curran and Officer Beal, R. 36; R. 38, is denied. Although Sheriff Curran initially moved to dismiss the claims against him in his personal capacity, he withdrew that motion in his reply brief. *See* R. 61 at 1.

The Armor defendants' motion is denied in part and granted in part. Counts I, II, III, and IV will proceed. Counts V and VI will proceed in part, and are dismissed without prejudice in part in accordance with this order. Court VII for respondeat

superior, which Plaintiff brought to preserve for appeal, is dismissed in accordance with the Seventh Circuit's precedent in *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782 (7th Cir. 2014).

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated:  March 12, 2019